UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 03-041-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JAMES KELLY PENDERGRASS, | ) | **MEMORANDUM ORDER** |
| | ) | **AND OPINION** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant James Kelly Pendergrass has filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(a).  [Record No. 158]  Having fully considered the matter, the motion will be denied for the reasons outlined below.

## I.

On November 25, 2003, Pendergrass pled guilty to counts 1, 2, 14, 19, 22, 23, 27, 28, 29, and 30 of a Superseding Indictment.  [Record No. 99] The counts to which Pendergrass admitted his guilt included: conspiring to manufacture methamphetamine; conspiring to distribute mixtures or substances containing methamphetamine; knowingly carrying firearms during and in relation to drug trafficking crimes; three counts of being a felon in possession of firearms; attempted manufacture of methamphetamine; and possession of firearms during and in relation to drug trafficking crimes.[1]  [*Id.*] The Court ultimately sentenced Pendergrass to 360 months and one day in prison, followed by five years of supervised release.  [*Id.*]

---

[1]    Several of the counts (i.e., Counts 1, 2, and 14) required a minimum term of incarceration of ten years under Title 21 of the United States Code.  Two others (i.e., Counts

Pendergrass was sentenced before the United States Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005). Thus, at the time of sentencing, Pendergrass faced a total sentence of 528 to 570 months under the then-binding United States Sentencing Guidelines.[2]  [Record No. 120 at 39]  Pendergrass was convicted under Count 19 for knowingly carrying firearms during and in relation to the drug trafficking crimes charged in Counts 14, 15, and 16 in violation of 18 U.S.C. § 924(c)(1)(A)(i).  For this conviction, he faced a mandatory minimum sentence of five years to run consecutively after any other sentence imposed.  [Record No. 94 at p. 31]  And for his conviction for under Count 28 for possessing firearms during and in relation to the crimes charged in counts 25, 26, and 27, he faced an additional consecutive term of imprisonment of twenty-five years under 18 U.S.C. § 924(c)(1)(C)(i).  [*Id.* at p. 51]

During the sentencing hearing, the United States moved to reduce the defendant's sentence pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) based on cooperation and testimony provided in a related matter on the Court's docket (*United States v. Miranda Creech*,

---

19 and 28) required minimum terms of five years and twenty-five years consecutive to any other term of imprisonment imposed pursuant to 18 U.S.C. § 924(c)(1)(A).  Based on a government sponsored motion under United States Sentencing Guideline ("U.S.S.G.") section 5K1.1, the Court reduced Pendergrass' sentence for the drug convictions to one day but did not reduce the terms requiring consecutive terms of five and twenty-five years of imprisonment.  The parties either directly or tacitly acknowledged at sentencing that this minimum period of incarceration was appropriate for the defendant's crimes, notwithstanding his cooperation.  [Record No. 120]  Because the United States moved for a sentence reduction under U.S.S.G. 5K1.1 as well as 18 U.S.C. § 3553(e), the Court was not constrained by any statutory mandatory minimum term.  But not withstanding that fact, the undersigned determined that that imposition of the minimum consecutive terms of five and twenty-five years for Counts 19 and 28 was necessary and appropriate.

[2]    For all counts except Counts 19 and 28, Pendergrass' guideline range was 168 to 210 months of imprisonment.

Criminal Action No. 6: 03-023-DCR).  [Record No. 120 at p. 37].  The Court sustained the motion and sentenced Pendergrass to a total of thirty years under Counts 19 and 28, and one day on the remaining counts.

Since the time Pendergrass was sentenced, Congress has reduced the minimum terms of imprisonment required for multiple counts of conviction under 18 U.S.C. § 924(c)(1)(A). More specifically, the First Step Act of 2018 modified the penalties under § 924(c). Thus, if Pendergrass were sentenced today, his mandatory minimum sentences for the convictions under Counts 19 and 28 would be two consecutive 60-month terms for a total of 120 months. [Record No. 160 at p. 3]  In addition, he would face a minimum ten-year term of incarceration for the convictions under Counts 1, 2 and 14.[3]

Pendergrass contends that the difference between the sentence imposed and the 120 months he would face today for his § 924(c) violations represents a gross disparity that amounts to an extraordinary and compelling circumstance warranting a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A).  Specifically, he argues that under the Sentencing Commission's recent amendments to the compassionate release policy in U.S.S.G. § 1B1.13(b)(6), his sentence qualifies as an unusually long sentence and that the § 3553(a) factors weigh in favor of granting his motion for compassionate release.

---

[3]      As noted above, except for the mandatory minimum terms under Counts 19 and 28, Pendergrass' (now) non-binding guidelines range for the remaining Counts would be 168 to 210 months of incarceration.  However, following Amendment 821 (eff. Nov. 1, 2024) which eliminated "recency points" for defendants with fewer that seven total points under U.S.S.G. §4A1.1(a) through (d), his guidelines range for these other counts would be 151 to 188 if he were sentenced under the 2024 Guidelines Manual.

## II.

The Court addresses as a threshold matter whether the United States Sentencing Commission exceeded its authority in enacting section 1B1.13(b)(6). When Congress enacted the First Step Act in 2018, it altered the sentence-reduction framework of 18 U.S.C. § 3582. To overcome the Bureau of Prisons' ("BOP") alleged inaction in filing motions for compassionate release, Congress allowed defendants to file these motions directly with sentencing courts after exhausting administrative remedies within the BOP. Once a quorum was reached, the Sentencing Commission then proceeded to develop a policy statement applicable to defendants filing motions under § 3582(c)(1)(A)(i). However, because the Sentencing Commission lacked a quorum at the time it was unable to address the issue promptly and a circuit split developed regarding "extraordinary and compelling" reasons justifying early release from a term of imprisonment previously imposed by a district court. Specifically, courts grappled with whether a non-retroactive change in the law could constitute an "extraordinary and compelling" circumstance.

In *United States v. McCall*, 56 F.4th 1048 (6th Cir. 2022), the Sixth Circuit sitting *en banc* addressed whether non-retroactive changes to sentencing statutes could be considered "extraordinary and compelling" for purposes of defendant-filed motions under 18 U.S.C. § 3582. Following extensive analysis, it ultimately held "that nonretroactive changes in sentencing law cannot be 'extraordinary and compelling reasons' that warrant relief." *Id.* at 1065-66. Specifically, the Sixth Circuit held that courts "cannot consider nonretroactive changes in sentencing law either alone or in combination with other factors to find extraordinary and compelling reasons exist." *Id*.

- 4 -

In reaching this determination, the Sixth Circuit looked at the text, history, and structure of the phrase, "extraordinary and compelling" and found that all areas weighed in favor of not allowing relief for non-retractive changes to sentencing law. It reasoned that the importance of finality in the criminal justice system and the presumption that changes in sentencing law are not retractive weighed heavily against reading retroactivity into the statute absent explicit direction from Congress. *Id.* (*citing United States v. McKinnie*, 24 F.4th 583, 587 (6th Cir. 2022)). And in considering the text of the statute, it reasoned that there is "little compelling about the duration of a lawfully imposed sentence." *Id.* at 1056.

The court also relied on the Supreme Court's long-standing rule that "newly recognized rules of criminal procedure do not normally apply in collateral review" and compassionate release never encompassed nonretroactive changes in sentencing law. *Id.* at 1057 (*citing Ramos v. Louisiana*, 140 S. Ct. 1390, 1407 (2020)). Finally, the Court noted that, when Congress intends for a change in sentencing law to apply retroactively, "it explicitly says so." *Id.* at 1056. As such, the Sixth Circuit definitively held courts should not consider retroactive changes when addressing prisoner-filed motions for compassionate release.

Following the *McCall* decision in December 2022, the United States Sentencing Commission finally obtained a quorum in 2023 and amended section 1B1.13 to include a definition of "extraordinary and compelling reasons" to justify compassionate release under 18 U.S.C. § 3582(c). *States v. Chineag*, 2025 WL 482342 at *6 (S.D. Fla. February 6, 2025). Section 1B1.13(b)(6) was amended to provide that "a change in the law may be considered in determining whether the defendant presents an extraordinary and compelling reason." In adding this provision, the Commission sought to resolve the circuit split which rejected the Sixth Circuit's reasoning. It stated: "[t]he amendment agrees with the circuits that authorize a

district court to consider non-retroactive changes in the law as extraordinary and compelling circumstances warranting a sentence reduction but adopts a tailored approach that narrowly limits that principle in multiple ways." Sentencing Guidelines for Federal Courts, 88 Fed. Reg. 28,254; 28,258 (May 3, 2023).

Following this change, several courts questioned whether the Sentencing Commission exceeded its congressionally delegated authority by amending 1B1.13(b)(6). *See generally United States v. Rutherford*, 120 F.4th 360, 375-76 (3d Cir. 2024); *United States v. Austin,* 125 F.4th 688, 692 (5th Cir. 2025); *United States v. O'Neil*, 735 F.Supp.3d 994, 1024 (E.D. Wis.); *United States v. Chineag*, 2025 WL 482342 (S.D. Fla. February 6, 2025). And after review of those decisions, the undersigned agrees that the Sentencing Commission's amendment to section 1B1.13(b)(6) exceeded the scope of its expressly delegated authority under 18 U.S.C. § 3582(c)(1)(A). In doing so, the Court is mindful that "[t]he Sentencing Commission unquestionably is a peculiar institution within the framework of our Government." *Mistretta*, 488 U.S. 361, 384 (1989). It is an institution with limited power in that it "is not a court" and "does not exercise judicial power." *Id.* at 393. Further, given its unique role, the Supreme Court has found the Commission's guidelines are "the equivalent of legislative rules adopted by federal agencies." *Stinson v. United States*, 508 U.S. 36, 45 (1993).

However, Congress conferred authority to the Commission only to "describe extraordinary and compelling reasons for relief" through its policy statements. 28 U.S.C. § 994. Under this limited grant of authority, the Commission cannot issue directives that are contrary to federal law. *Chineag,* 2025 WL 482342 at *10 (*quoting United States v. LaBonte*, 520 U.S. 751, 758 (1997)). It also "does not have the authority to amend [a] statute" or "to override [a] statute" as courts have previously interpreted it. *O'Neil*, 735 F.Supp.3d at 1015

- 6 -

*quoting Neal v. United States*, 516 U.S. 284, 288, 294 (1994). The question thus becomes whether issuing the policy statement in U.S.S.G. § 1B1.13(b)(6) was a valid exercise of the Commission's authority. Specifically, the Court considers whether the Commission exceeded its statutory authority in stating that nonretroactive changes in the law can constitute an "extraordinary and compelling" circumstance for purposes of 18 U.S.C. § 3582(c)(1)(A).

When Congress amends sentencing provisions, the ordinary "practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey v. United States*, 567 U.S. 260, 280 (2012); *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 286 (1994) (Scalia, J., concurring in judgment) (noting that "a legislative enactment affecting substantive rights does not apply retroactively absent a clear statement to the contrary"). This is for practical purposes, as allowing defendants to attack their sentence freely would create a never-ending cycle of re-analyzing facts considering new changes to the law, and for deterrence purposes, as "without finality, the criminal law is deprived of much of its deterrent effect." *Teague v. Lane*, 489 U.S. 288, 309 (1989). For that reason, "[w]hen congress wants a change in sentencing law to have retroactive effect, it explicitly says so." *McCall*, 56 F.4th at 1056 (6th Cir. 2022).

Given this standard practice, it is difficult to see how Congress could have intended for changes in the law that are not explicitly deemed retroactive to be "extraordinary and compelling." The Sixth Circuit has previously held that new statutes and caselaw apply only to "defendants not yet sentenced," which is the expected practice in our legal system. *Id.* at 1055 *citing Dorsey*, 567 U.S. at 280. And what is expected cannot be extraordinary." *Id.* at 1056. In fact, Congress applied this reasoning in enacting section 401(a) of the First Step Act when it deemed that it intended it to be a "purely prospective change in criminal penalties."

*Chineag*, 2025 WL 482342 at *14. As such, it makes little sense to think Congress intended only one specific portion of the statute to have retroactive effect and thus puts the Commission's policy statement in direct conflict with Congress' intent.

The Commission is required to promulgate policy statements that are "consistent with all pertinent provisions of *any* Federal statute," 28 U.S.C. § 994(a) (emphasis added). It does not make sense that the Commission could develop guidelines that generally follow principles of retroactivity and finality but then "disregard those principles and explicitly nonretroactive statutes elsewhere in the U.S. Code." *Chineag*, 2025 WL 482342 at *14. Granting the Commission the authority to consider "changes in law when other provisions of federal statutory law preclude it from doing so would strap retroactivity into statutes where that change was never authorized." *Id*.

Finally, "throughout the structure of the First Step Act as a whole, Congress took care to 'delineate between retroactive and nonretroactive changes,' and it would belie that congressional design to interpret § 3582(c)(1)(A) as 'unscrambling that approach.'" *O'Neill,* 735 F.Supp.3d 994 at 1021-22 (*quoting McCall*, 56 F.4th at 1057). The practical effect of this approach is that U.S.S.G. § 1B1.13(b)(6) would effectively make any change in the law apply retroactively. *Id.* In enacting the First Step Act, Congress did not intend to change the substance for what constituted an "extraordinary and compelling" circumstance. It intended only to alter the procedure for filing a motion and allow defendants to file a motion under § 3582 directly. Since Congress did not change the meaning of "extraordinary and compelling," courts should "assume the phrase retained the meaning it had under the previous version of the statute." *O'Neill*, 735 F.Supp.3d 994 at 1024 (*quoting McCall*, 56 F.4th at 1060).

- 8 -

In summary, the Court believes the United States Sentencing Commission exceeded its statutory authority in drafting U.S.S.G. § 1B1.13(b)(6) as it did and thus, the provision is invalid.  But notwithstanding this holding, Pendergrass' claim also fails under other grounds.  Thus, even if U.S.S.G. § 1B1.13(b)(6) constitutes a valid exercise of the Commission's authority, Pendergrass has failed to show that his sentence is so unusually long that it constitutes an extraordinary and compelling reason to justify his early release from incarceration.

### III.

As a general matter, "[o]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute."  *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013).  However, compassionate release is an exception to this rule.  *McCall*, 56 F.4th at 1056.  The decision to reduce a sentence under 18 U.S.C. § 3582(c)(1)(A) provides that discretion to reduce a sentence belongs entirely to the district court, and district courts must "supply specific factual reasons for their compassionate release decisions."  *United States v. Jones*, 980 F.3d 1098, 1101-02 (6th Cir. 2020).  Before a defendant may properly petition a district court for compassionate release, he or she must first demonstrate exhaustion of administrative remedies within the BOP.  18 U.S.C. § 3582(c)(1)(A).

After ensuring exhaustion, district courts conduct a "three-step inquiry."  *Jones*, 980 F.3d at 1101.  First, the movant must show that "extraordinary and compelling reasons warrant the [sentence] reduction."  *McCall*, 56 F.4th at 1054.  Second, the Court must confirm that "any sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission."  *Id.*  Finally, the movant must show that the reduction is warranted

considering the relevant § 3553(a) factors." *Id.*  It is the moving party's burden to establish entitlement to a reduced sentence.  *United States v. Alam*, 960 F.3d 831, 836 (6th Cir. 2020). Further, the court will deny a motion for a sentence reduction "if the defendant fails to show either that extraordinary and compelling reasons warrant a sentence reduction or that the § 3553(a) factors support a reduction."  *McKinnie*, 24 F.4th at 586.

**A.**

The Sentencing Commission's recent amendments to the compassionate release policy statement list six categories of extraordinary and compelling reasons that may support compassionate release.  U.S.S.G. § 1B1.13(b).  Most relevant to the present case, § 1B1.13(b)(6) provides an "unusually long sentence" may qualify as an "extraordinary and compelling" circumstance, stating:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

Although there is no bright line rule for what constitutes an unusually long sentence, courts have held a sentence "is 'unusually long' where there is a 'gross disparity' between the original sentence and what it would be today."  *United States v. Aguon*, 2025 WL 440115, at *5 (Feb. 7, 2025).  A 'gross disparity' is not strictly defined, but it exists when such disparity is glaringly noticeable.  *Id. citing United States v. Allen*, 717 F.Supp 3d 1308, 1316 (N.D. Ga. 2024).

- 10 -

If Pendergrass were sentenced today, his new term of incarceration would not result in a gross disparity between his new sentence and previous sentence. Under the amended Sentencing Guidelines, Pendergrass' criminal history category would be reduced from category III to category II, thus lowering his guideline range to 151 to 188 months. U.S.S.G. § 1B1.10 (Nov. 2023). Of course, this does not include the two consecutive sixty-month mandatory minimums for his two convictions under § 924(c), totaling 120 months. [Record No. 158 at p. 9]

Although Pendergrass is correct that today he would not receive the same sentences for his § 924(c) convictions, this only accounts for part of the sentence the Court would impose. Pendergrass contends the difference between the 120 months he would have received for his 924(c) convictions and the 360 months and one day he received is a gross disparity. [Record No. 158] This misses the mark as he does not account for his sentence for the other counts to which he pled guilty. His analysis does not include the minimum sentences for his convictions under Counts 1, 2, 14, and 27, and his total guideline range of 151 to 188 months.

At his original sentencing, Pendergrass benefited from the United States' motion filed under U.S.S.G. § 5K1.1 which reduced his sentence for the counts other than his mandatory-minimum terms for the firearms convictions (i.e., other than Counts 19 and 28). If he were sentenced today, he would still the benefit of the government's motion, but he would not have the effect of reducing the sentence for the drug counts to one day. The Court would still weigh the *numerous* aggravating factors such as the number of firearms in his possession, obliterated serial numbers, the volume of ammunition he possessed, etc. These factors guided the Court's decision to impose the original sentence of slightly more than thirty years. And these factors would still weigh heavily in the Court's decision-making if it were to reimpose a sentence

- 11 -

today for the defendant's crimes. Even with the benefit of a government-sponsored motion for cooperation, Pendergrass would face a significant sentence, far greater than the 120 months he contends the Court would impose today.

When a court imposes a sentence, it does not do so in isolation. *Pepper v. United States*, 562 U.S. 476, 507 (2011). Sentences are intended to "suit not merely the offense but the individual defendant." *Greenlaw v. United States*, 554 U.S. 237, 253 (2008). Thus, altering any portion of the original sentence can undermine the District Court's intent in imposing the original sentence. *United States v. White*, 406 F.3d 827, 832 (7th Cir. 2025). Here, the record reflects the undersigned weighed the various mitigating and aggravating factors and imposed a sentence tailored to the defendant. Pendergrass' contention that today he would only receive a sentence 1/3 the length of the sentence imposed in 2004 fails to account for the fact that, with the sentencing guidelines no longer binding, and after considering evaluation of the relevant factors of 18 U.S.C. § 3553(a), the sentence lengths would not be significantly disproportionate.

**B.**

Finally, the undersigned considers "all relevant § 3553(a) factors before rending a compassionate release decision." *Jones*, 980 F.3d at 1114. The factors include, *inter alia*, (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kind of sentences available; (4) the kinds of sentence and the sentencing range; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C.S. § 3553(a).

Pendergrass argues the court should weigh the 3553(a) factors in favor of release because he no longer poses a danger to the community and has been rehabilitated. [Record No. 158 at p. 21] He notes that he has been housed in a minimum-security prison for over four years, leaves to walk to work where he has continuously received strong performance reviews, and was granted a six-week furlough to take a CDL course. [*Id.*] His FSA Recidivism Risk Assessment also shows that his security level is minimal, and he has not been written-up since moving to the lower security facility.[4]

However, he overlooks several other factors which support the sentence originally imposed. Pendergrass engaged in a conspiracy over several years to manufacture and distribute large quantities of methamphetamine. At the time of his initial arrest, he was in possession of numerous items used to manufacture methamphetamine, along with multiple firearms. [Record No. 94 at p. 23-24] He also admitted to law enforcement that he "manufactured, sold and used methamphetamine on a regular basis." [*Id.* at p. 24] Subsequent to his release, further investigations revealed the possession of even more firearms and items used to manufacture methamphetamine. But the initial arrest did not deter his criminal activity; instead, he continued.

Pendergrass' presentence investigation report outlines that he was accountable for conspiring to manufacture and distribute approximately 352.4 grams of methamphetamine.[5]

---

[4] Although Pendergrass has not incurred any disciplinary infractions since moving to his current facility, he has received at least six disciplinary infractions during his incarceration.

[5] Twenty+ years ago, it was common for individuals to illegally manufacture methamphetamine using highly skilled "cooks" such as Pendergrass and "smurfs" who would steal or otherwise obtain and provide some of the ingredients in exchange for a small portion of the finished product. Today, these operations have been largely replaced by high-grade methamphetamine smuggled across the country's southern border.

[*Id.* at p. 27]  His actions also caused regular discharge of toxic materials into the environment, and he was also charged with possession of 16 firearms and 600 rounds of ammunition after having been convicted of a felony offense.  [*Id.* at p. 28]  Simply put, these are extremely serious offenses, regardless of whether the conduct occurred in 2003 or now.

Next, the Court need not reduce Pendergrass' sentence to avoid sentencing disparities with similarly situated defendants.  While some courts have reduced sentences of defendants charged with similar offenses, comparison of an individual sentence to those imposed in "other singular cases [is] weak evidence to show national sentencing disparity."  *United States v. Westberry*, WL 5169279 at *5 (E.D. Ky. November 4, 2021) (*quoting United States v. Rossi*, 422 F.App'x 425, 435 (6th Cir. 2011)).  And the Sixth Circuit has held, arguments regarding individual sentences being out of scope with other similarly situated defendants should not be recognized due to the individual nature of sentencing.  *See United States v. Hymes*, 19 F.4th 928, 935-38 (6th Cir. 2021).

Further, compassionate release is "not an open-ended invitation to simply relitigate and reweigh the § 3553(a) factors based on facts that existed at sentencing."  *United States v. Hunter,* 12 F.4th 555, 569 (6th Cir. 2021).  The Court significantly deviated from the total possible sentence Pendergrass faced in imposing his original sentence, given his individual circumstances.  The sentence imposed, then and now, serves the important sentencing goals of deterrence (both general and specific) as well as protection of the public from further potential crimes of this defendant.

While the Court commends Pendergrass' rehabilitation efforts, his original term of imprisonment constitutes a just punishment for his admitted criminal conduct.  The Court remains satisfied that the original sentence remans sufficient, but not greater than necessary to

reflect the seriousness of Pendergrass' crimes, constitutes just punishment, and provides adequate general and specific deterrence to future potential criminal conduct.

**IV.**

Based on the foregoing analysis, it is hereby

**ORDERED** that the defendant's motion for compassionate release [Record No. 158] is **DENIED**.

Dated: April 15, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky